UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BALLAS NAILS & SPA, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:20 CV 1155 CDP |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Ballas Nails & Spa, LLC, owns and operates a nail salon in St. Louis County, Missouri. It was forced to suspend its business following government closure orders issued in response to the outbreak of the novel coronavirus, known to cause the disease Covid-19. Ballas brings this declaratory judgment action against its insurer, defendant Travelers Casualty Insurance Company of America, seeking declarations that it is entitled to coverage on its insurance claim for lost business income following the issuance of these closure orders. Because the insurance policy at issue does not provide coverage for Ballas's claims, I will grant Travelers' motion to dismiss.

### Background

In March 2020, both St. Louis County and the City of St. Louis declared a public health emergency given the rapidly evolving state of the Covid-19 crisis.

On March 21, the St. Louis City Director of Health & Hospitals/Health Commissioner issued an executive order that required individuals living within the City to remain at home, except to perform tasks essential to the health and safety of individuals. And businesses were ordered to cease all activities with limited exceptions. St. Louis County, which is a separate county from and abuts St. Louis City, issued similar orders. Plaintiff Ballas Nails & Spa, a business located in St. Louis County, was not considered an "essential" business and was therefore subject to the restrictions imposed by the orders. On April 3, Missouri's Director of the Department of Health and Senior Services issued a stay-at-home order that directed individuals residing in Missouri to avoid leaving their homes. On May 18, St. Louis County and City businesses were permitted to reopen with limitations and restrictions in place.

Ballas asserts that it was forced to suspend or reduce its business because of Covid-19 and the resultant closure orders issued by civil authorities in Missouri. It made a claim under its Travelers insurance policy for lost business income, which Travelers denied on August 11, 2020. Ballas then filed this three-count declaratory judgment action on August 27, seeking a declaration that 1) its business losses are covered under the Business Income and Extra Expense provision of the policy; 2) its business losses are covered under the Civil Authority provision of the policy; and 3) the "Sue and Labor" provision of the policy entitles it to recover the

expenses it reasonably incurred to protect its property from further damage by Covid-19.

Travelers moves to dismiss Ballas's complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, arguing that the policy provides coverage for income losses caused only by physical loss of or damage to property, not for economic loss caused by governmental or other efforts to protect the public from disease. Travelers also argues that, regardless, several policy exclusions bar coverage in the circumstances of this case. For the following reasons, Travelers' arguments are well taken.

## Legal Standards

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When reviewing a Rule 12(b)(6) motion, I assume the factual allegations of the complaint as true and construe them in plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief "that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The factual allegations must be sufficient to "'raise a right to relief above the speculative level.'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). More than labels and conclusions are required. *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"Because federal jurisdiction in this case is based on diversity of citizenship, state law controls the interpretation of the Policy." *DeAtley v. Mutual of Omaha Ins. Co.,* 701 F.3d 836, 838 (8th Cir. 2012). Under Missouri law,[1] the interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assurance Co.,* 337 S.W.3d 700, 705 (Mo. banc 2011). The insured bears the burden of proving coverage under an insurance policy, and the insurer bears the burden of proving the applicability of any exclusion from coverage. *Fischer v. First Am. Title Ins. Co.,* 388 S.W.3d 181, 187 (Mo. Ct. App. 2012). When construing an insurance policy, I must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Allen v. Continental W. Ins. Co.,* 436 S.W.3d 548, 553-54 (Mo. banc 2014) (internal quotation marks and citation omitted).

If an insurance policy is unambiguous, I must enforce the policy as written. *Allen,* 436 S.W.3d at 554. If the policy is ambiguous, however, any ambiguity must be resolved against the insurer-drafter. *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the

---

[1] The parties do not dispute that Missouri substantive law controls.

- 4 -

policy," or if the policy "is reasonably open to different constructions." *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007) (internal quotation marks and citation omitted).  The mere "fact that parties disagree over the policy's interpretation does not render a term ambiguous."  *O'Rourke v. Esurance Ins. Co.*, 325 S.W.3d 395, 398 (Mo. Ct. App. 2010).

## The Policy

The Travelers policy at issue here is for commercial liability and business property insurance.  It covered the period of October 22, 2019, to October 22, 2020.

The Business Income and Extra Expense provision of the policy requires Travelers to

> pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.

(ECF 1-5 at header pp. 4-5.)  "Covered Causes of Loss" are defined as "risks of direct physical loss," subject to certain limitations and exclusions.  (*Id.* at header pp. 5-6.)  The Extra Expense provision applies to "reasonable and necessary expenses" Ballas incurred "during the 'period of restoration'" that it would not have incurred "if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss."  (*Id.* at header p. 5.)

>Coverage under the <u>Civil Authority</u> provision applies to
>
>the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss.

(ECF 1-5 at header p. 17.)

The <u>Duties in the Event of Loss or Damage</u> clause, which Ballas refers to as "Sue and Labor" coverage, requires the insured to "take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim."  (ECF 1-5 at header p. 30.)

Finally, the <u>Virus Exclusion</u> states that Travelers "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (ECF 14-7 at header p. 198.)  This exclusion applies to "forms or endorsements that cover business income, extra expense, . . . or action of civil authority."  (*Id.*)

## Discussion

The complaint does not allege any facts demonstrating that Ballas sustained a "direct physical loss of or damage to property" resulting from a "covered cause of loss," which is required for coverage under the Business Income and Extra

- 6 -

Expense provision. The complaint also fails to allege facts showing any "direct physical loss of or damage to property" resulting from a "covered cause of loss" at other locations, which is required for Civil Authority coverage. And because expenses are reimbursable under the Sue and Labor clause only in the settlement of an already-covered claim, the clause does not apply here since Ballas does not have a covered claim. Finally, even if coverage were found to exist under one or more of these provisions, the policy's Virus Exclusion bars Ballas's claims.

Business Income and Extra Expense

The parties dispute whether Ballas's allegations establish a "direct physical loss of or damage to property" as required for coverage under the Business Income and Extra Expense provision of the policy.

The policy does not define "direct physical loss" or "direct physical damage," so I must rely on the plain and ordinary meaning of the terms. *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law). Ballas contends that the Eighth Circuit decided in *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349 (8th Cir. 1986), that the term "direct physical loss" is ambiguous under Missouri law, and that I must therefore construe the term in Ballas's favor. This reading of *Hampton Foods* is incorrect. The relevant policy language in *Hampton Foods* stated: "[t]his policy insures against loss of or damage to the property insured * * * resulting from all risks of direct physical

loss[.]" *Id.* at 351. What the district court and Eighth Circuit found ambiguous in *Hampton Foods* was the policy's coverage for "all risks" of direct physical loss, reasoning that the term "all risks" could be reasonably construed in different ways. *Id.* at 352. Although the Eighth Circuit agreed with the district court that the term was ambiguous, it nevertheless agreed with the insurer Aetna that the policy did not cover *every* risk of loss, given that coverage for mere "danger" or "risk" of physical loss would cover "any number of conjectural risks of loss." *Id.* Accordingly, something more than mere conjecture is required. And the something more in *Hampton Foods* that gave rise to the "danger" or "risk" of loss was actual physical damage to the building that housed Hampton, including falling plaster and other signs of imminent collapse affecting the covered property. "Hampton suffered direct, concrete and immediate loss due to extraneous physical damage to the building. Because of the unquestioned danger of reentering the building, Hampton could simply have left its property in the building pending its collapse; in that event, there would have been direct physical damage to the personal property." *Id.* Accordingly, the policy covered Hampton's losses resulting from its "sudden evacuation of the collapsing building." *Hampton Foods*, 787 F.2d at 351.

As have several courts across the country, the United States District Court for the Western District of Missouri recently addressed the "direct physical loss"

requirement in relation to business insurance policies and the Covid-19 crisis. In *Studio 417, Inc. v. Cincinnati Ins. Co.*, Case No. 20-cv-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020), the district court applied Missouri law and looked to the "plain and ordinary meaning" of the phrase "direct physical loss" under standard dictionary definitions: "'[D]irect' [is defined] in part as 'characterized by close logical, causal, or consequential relationship.' 'Physical' is defined as 'having material existence:  perceptible especially through the senses and subject to the laws of nature.' 'Loss' is 'the act of losing possession' and 'deprivation.'" *Id.* at *4 (internal citations omitted). Against this backdrop, the court found that the plaintiff-businesses plausibly alleged direct physical loss resulting from Covid-19 because they asserted in their complaint that "COVID-19 particles attached to and damaged their property, which made their premises unsafe and unusable." *Id.* at *6. The court likened the plaintiff-businesses' circumstances to other reported cases where "direct physical loss" occurred despite the absence of a physical alteration of property. *See id.* at *5 (citing *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (affirming denial of coverage but recognizing that "[w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct [physical] loss to its owner"); *Prudential Prop. & Cas. Ins. Co. v. Lilliard-Roberts*, CV-01-1362-ST, 2002 WL 31495830, at

- 9 -

*8-9 (D. Or. June 18, 2002) (inability to inhabit house because of the presence of visible mold was sufficient to constitute a direct physical loss, citing cases involving the inability to inhabit buildings because of the presence of gas vapors and carbon monoxide levels); *General Mills, Inc. v. Gold Medal Ins. Co.*, 622 N.W.2d 147, 152 (Minn. Ct. App. 2001) (inability to distribute otherwise edible food products made from oats treated with unapproved pesticide constituted direct physical loss because the products' failure to meet FDA regulations was caused by the contamination – "We have previously held that direct physical loss can exist without actual destruction of property or structural damage to property; it is sufficient to show that insured property is injured in some way.")).  The *Studio 417* court similarly reasoned that despite the lack of actual destruction of or structural damage to the plaintiff-businesses' property, the claimed physical presence of the Covid-19 virus on the businesses' premises and its physical adherence to their property rendered the properties unsafe and unusable, thus constituting a direct physical loss.  2020 WL 4692385, at *6.

Here, unlike the plaintiff-businesses in *Studio 417*, Ballas does not allege that the virus was present on its premises, and indeed affirmatively avers its absence:  "Plaintiff's loss was not caused by the virus, there is no evidence that the virus has ever been on the Plaintiff's premises."  (ECF 1 at ¶ 28.)  Accordingly, Ballas cannot and does not allege that its property was rendered unusable or the

- 10 -

premises uninhabitable because of the virus's direct physical presence there. Indeed, the circumstances here are akin to two cases recognized by the Eighth Circuit in *Hampton Foods* that fell outside the scope of direct physical loss – each involving circumstances where the insured physical property was not directly affected by the claimed event. *See Hampton Foods*, 787 F.2d at 352 (citing *Bros., Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611 (D.C. Cir. 1970) (no direct physical damage due to business falloff attributable to imposition of curfew restrictions during civil disturbance); *Cleland Simpson Co. v. Fireman's Ins. Co. of Newark, N.J.*, 140 A.2d 41 (Pa.1958) (no direct physical loss coverage for lack of access to property due to mere fear of possibility of fire during hurricane)).

Here, Ballas does not claim any injury to property. Nor does it assert facts showing that its property was actually contaminated by the coronavirus or that the presence of the virus itself on the premises rendered the property uninhabitable or unusable. Ballas's claim therefore fails to fall within the permissible realm of "direct physical loss" under the policy's Business Income and Extra Expense provision. And Ballas's contention that its losses were caused by the government closure orders themselves – without any claim that its property was physically affected – is not enough to show "direct physical loss." *See Source Food Tech., Inc. v. U.S. Fid. & Guar. Co.*, 465 F.3d 834 (8th Cir. 2006) (no direct physical loss where embargo barred entry of insured's beef into United States and there was no

evidence that insured's beef was contaminated), *cited in Studio 417*, 2020 WL 4692385, at *5-6.

Finally, to the extent Ballas alleges that the government closure orders resulted in its inability to use its property and thus resulted in loss, the policy contains an exclusion stating that Travelers "will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." (ECF 1-5 at header p. 26.) This separate provision for loss of use "suggests that the 'direct physical loss of . . . property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force." *Mudpie*, *Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 20-cv-03213-JST, 2020 WL 5525171, at *6 (N.D. Cal. Sept. 14, 2020). I agree with Travelers that construing the policy's requirement of "direct physical loss or damage" to include the mere loss of use of insured property with nothing more would negate the "loss of use" exclusion. "[T]he rules of construction . . . require a court to avoid construing a contract in a way which renders other terms and provisions meaningless." *Wentzville Park Assocs. L.P. v. American Cas. Ins. Co. of Reading, PA*, 263 S.W.3d 736, 744 (Mo. Ct. App. 2008).[2]

---

[2] Ballas cites no case holding that mere loss of use of property constitutes "direct physical loss or damage" to the property. The cases Ballas cites, including *Studio 417* and *Hampton Foods*, involve allegations that physical property is tangibly affected – whether by physical contamination (*Studio 417*) or by physical instability and imminent collapse of the building structure where the property is located (*Hampton Foods*). To the extent Ballas relies on my holding in *Mehl v. The Travelers Home & Marine Ins. Co.*, to argue that loss of use without

- 12 -

Ballas's complaint does not allege any facts demonstrating that it experienced a direct physical loss of or direct physical damage to its property by the coronavirus or as a result of government closure orders. I will therefore grant Travelers' motion to dismiss with respect to Ballas's claim for Business Income and Extra Expense under the policy.[3]

Civil Authority

The policy's Civil Authority provision provides business-loss coverage to an insured when a Covered Cause of Loss causes damage to another's property within 100 miles and a civil authority then prohibits access to the insured property. A direct physical loss of or damage to property is therefore again required to trigger coverage. Accordingly, if the complaint does not plead facts alleging some actual contamination or presence of the virus on neighboring property, then the complaint does not state a plausible claim for relief under the Civil Authority provision of the policy.

Here, Ballas does not plead any facts in its complaint demonstrating that the

---

physical damage to property is covered as property loss, it is important to note that — unlike the policy here — the specific policy language at issue in *Mehl* included coverage for "loss of use." *See* Case No. 4:16CV1325 CDP (E.D. Mo. May 2, 2018) (ECF 25, Memo. & Order). Not so with the policy here.

[3] In its opposition to Travelers' motion to dismiss, Ballas asserts that the *threat* of the coronavirus coming onto its premises and affecting its property constitutes a sufficient danger or risk of direct physical loss, thus bringing its claim within the terms of the policy. But Ballas did not assert this alleged threat in its complaint. On a motion to dismiss, I am limited to the factual assertions made in the complaint. In any event, as noted by the Eighth Circuit in *Hampton Foods* and as discussed above, mere "danger" or "risk" of loss or damage, with nothing more, does not give rise to a direct physical loss of or damage to property.

coronavirus contaminated or was present on any property within 100 miles of its business, or that a civil authority then prohibited access to its business because of the condition of neighboring properties.  Instead, Ballas contends the closure orders were issued to prevent the spread of the coronavirus.  Because the orders were preventative and Ballas makes no allegations of damage to neighboring property, I will grant Travelers' motion to dismiss with respect to Civil Authority coverage under the policy.

Duties in the Event of Loss or Damage

Ballas asserts coverage under this "Sue and Labor" provision, claiming that Travelers is obligated to reimburse Ballas for the amounts it incurred to protect its property from further damage by Covid-19.  Travelers correctly points out, however, that this provision of the policy is not a coverage provision.  Instead, it provides that the insured has certain duties in the event of loss or damage, including to protect the covered property from "further damage" and to "[k]eep a record of . . . expenses necessary to protect the Covered Property for consideration in the settlement of the claim."

In response to Travelers' motion to dismiss, Ballas argues that the Sue and Labor provision is designed to protect Travelers' interest by imposing a duty on the insured to reduce and mitigate "the risk of damage from a covered loss," thereby bringing within its coverage Ballas's mitigation efforts to prevent the risk of

- 14 -

Covid-19 entering, spreading, and staying within the covered premises.  (ECF 23 at p. 15.)  But the plain language of the Sue and Labor clause shows that it applies to mitigation efforts to protect property from "further damage," which necessarily contemplates that damage from a covered loss has already occurred.  Protection from "further damage" cannot reasonably be construed to include efforts to ward off all future risks in the absence of a covered loss.

For the reasons set out above, Ballas's complaint fails to plead a covered loss.  And without a covered loss, the Sue and Labor provision is not triggered.  I will therefore grant Traveler's motion to dismiss Ballas's claim for reimbursement under the Sue and Labor provision of the policy.

Virus Exclusion

Even if Ballas had pled facts sufficient to show direct physical loss of or damage to property, bringing its claims within the cited provisions of the policy, I nevertheless conclude that Travelers met its burden of demonstrating that the policy's Virus Exclusion bars Ballas's claims.

The policy's Virus Exclusion precludes coverage for any loss or damage "caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Although Ballas alleges in its complaint that its loss was caused by the government closure orders and was not caused by or resulted from the virus, and indeed that there is no

evidence that the virus was ever present on its property, Ballas nevertheless pleads that Covid-19 is the reason for the closure orders being issued and the underlying cause of its alleged loss. While it was the orders that technically forced Ballas to suspend its business to protect public health, the orders came about only because of the Covid-19 virus spreading rapidly throughout the community. The primary cause of Ballas's business temporarily closing was the presence of the virus in St. Louis County and the State of Missouri. Ballas's business interruption losses would not have occurred but for the coronavirus that causes Covid-19.[4]

## Conclusion

There can be no doubt that the Covid-19 crisis severely affected Ballas's business. But in the absence of direct physical loss of or damage to property as required by the plain and unambiguous language of the insurance contract, Travelers cannot be compelled to pay business interruption insurance on Ballas's claims. And even if there were direct physical loss or damage, the Virus Exclusion applies to bar Ballas's claims.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Travelers Casualty Insurance Company of America's Motion to Dismiss the Complaint Pursuant to Fed. R. Civ.

---

[4] Because Ballas's complaint does not allege a covered loss, and the Virus Exclusion otherwise bars recovery, I need not address Travelers' other claimed exclusions, namely the "Acts or Decisions" exclusion and the "Ordinance or Law" exclusion.

P. 12(b)(6) [13] is **GRANTED**, and plaintiff Ballas Nails & Spa, LLC's complaint is **DISMISSED** with prejudice.

    A separate Order of Dismissal is entered herewith.

                                                                _____
                                                                CATHERINE D. PERRY
                                                                UNITED STATES DISTRICT JUDGE

Dated this 5th day of January, 2021.